IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW OLMSTED,

        Plaintiff,

    v.

DOUGLAS COUNTY, *and* DEPUTY
ANTHONY MCIRVIN, *in his
individual capacity,*

        Defendants.

Civ. No. 6:21-cv-01464-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Matthew Olmsted brings this civil rights case against Defendants Douglas County and Deputy Anthony McIrvin, alleging excessive force under the Fourth Amendment, as well as state law claims of battery and intentional infliction of emotional distress ("IIED"). The claims stem from an incident in December of 2020, when Plaintiff was housed in Douglas County jail as a pretrial detainee. While walking back to his cell, Plaintiff and Deputy McIrvin became involved a physical altercation, resulting in a rough amputation of Plaintiff's fingers after they were slammed in his cell door. The parties disagree whether Plaintiff's injuries stem from an intentional assault, or a lawful, reasonable use of force. Defendants move for summary judgment on all claims. Defs.' Mot. Summ. J., ECF No. 32. For the following reasons, Defendants' Motion (ECF No. 32) is GRANTED in part and DENIED in part.

## BACKGROUND

    In October of 2020, Plaintiff was indicted on several state criminal charges and booked into the Douglas County jail. Hisel Decl. Ex. 3, at 2, 5, ECF No. 33. On November 12, 2020, Dr.

1 – OPINION AND ORDER

Gregory Czar, Ph.D., P.C., conducted a psychological examination of Plaintiff and diagnosed him with Schizoaffective Disorder and Amphetamine-Induced Psychotic Disorder. *Id*. at 13. Based on Plaintiff's diagnosis, the Douglas County Circuit Court found that Plaintiff lacked the mental fitness to proceed in his multiple pending criminal cases and ordered the Oregon State Hospital to evaluate Plaintiff for treatment. *Id*. at 15–16.

While in custody at the Douglas County Jail, Plaintiff and Deputy McIrvin were involved in two notable incidents. The first occurred on November 23, 2020, when Deputy McIrvin escorted Plaintiff back to his cell after Plaintiff refused to attend an appointment with a mental health provider. Defs.' Mot. 6. According to Deputy McIrvin, when Plaintiff approached the cell he stated, "come into my cell you punk, I'll teach you a lesson." McIrvin Decl. Ex. 1, ECF No. 34. According to Deputy McIrvin's report, Plaintiff then turned around and lunged at Deputy McIrvin, who responded by pushing Plaintiff into his cell and shutting the door. *Id*. Deputy McIrvin later testified that Plaintiff "got about a step or two inside of the door, spun around towards me[1] so I pushed him towards the bunk." Hisel Decl. Ex. 8, at 6.

The second altercation took place on December 20, 2020, which led to the claims in this case. Defs.' Mot. 7. On their way back to Plaintiff's cell from the showers, Plaintiff again taunted Deputy McIrvin with threats,[2] obscenities, and racial slurs. Hisel Decl. Ex. 8, at 7–8. Deputy McIrvin described Plaintiff as animated, with "very quick movements, flailing his arms, [and] tensing his muscles" during their walk down the hallway. *Id*. at 9. At no point during the

---

[1] It is unclear from Deputy McIrvin's deposition whether Plaintiff actually "lunged" at him, as he averred in his earlier report.

[2] According to Deputy McIrvin, Plaintiff "was notorious for yelling threats of violence" and spitting at staff from inside his jail cell, and on several occasions threatened Deputy McIrvin personally as he passed by. Mee Decl. Ex. 101, at 6, ECF No. 43. However, Deputy McIrvin could not recall Plaintiff ever carrying out those threats or violently assaulting staff or other inmates. *Id*. at 18–19.

2 – OPINION AND ORDER

walk down the hallway did Deputy McIrvin have physical contact with Plaintiff. *Id*. at 9–10. However, when Plaintiff arrived at the threshold of his cell, he apparently turned around to face Deputy McIrvin, and raised "his hands up, roughly chin height in a boxing stance." *Id*. at 12. When Plaintiff started to approach Deputy McIrvin, he delivered a "focused" blow[3] to Plaintiff's face, knocking him backwards into his cell. *Id*. at 8–9, 22. According to Deputy McIrvin, Plaintiff fell down in a "seated position" on the floor inside his cell, with his feet pointing towards the door and his upper body towards the back of the cell. *Id*. at 12–14. Deputy McIrvin then saw Plaintiff "get on his feet" and start reaching towards the door, so Deputy McIrvin quickly slammed the cell door shut.[4] *Id*. at 15. He estimates that "less than one second" passed between Plaintiff's fall and the cell door shutting. *Id*.

Unsurprisingly, Plaintiff's description of the altercation casts Deputy McIrvin's actions in a different light.[5] In his deposition, Plaintiff described Deputy McIrvin as "a really handsy guy" who had already "attacked" Plaintiff once before (referring to the November 23, 2020 incident). Hisel Decl. Ex. 9, at 3. Plaintiff stated that he walked backwards to keep an eye on Deputy McIrvin and when he reached the cell door he raised his left arm in front of his chest in a

---

[3] Because Plaintiff's hands were raised in front of his chest, Deputy McIrvin believed that Plaintiff was about to hit him. He explains that this is why he chose to punch Plaintiff in the face, rather than push Plaintiff into his cell, as Deputy McIrvin had done on a prior occasion. Hisel Decl. Ex. 8. at 18–19 ("So to drop my hands and maybe try and push, I'm opening myself up for being struck.").

[4] Deputy McIrvin admits that he used more force than usual to "shut the door as fast as [he] could." *Id*. at 15.

[5] Plaintiff's Counsel warns against "relying on Plaintiff's testimony given his near constant psychosis and detachment from reality," and instead advises the Court to draw inferences solely from Defendant's explanation of events. Pl.'s Resp. 6. However, at the summary judgment stage, the Court must examine the evidence presented by both parties without making its own credibility determination. *See Collins v. U.S. Dep't of Veterans Affs.*, 497 F. Supp. 3d 885, 893–894 (S.D. Cal. 2020) (When ruling on a summary judgment motion, "[t]he court should not weigh the evidence or make credibility determinations. The evidence of the non-movant is to be believed."). Notwithstanding Plaintiff's diagnosed mental illness, this Court gives credence to Plaintiff's version of events — which he testified to under oath — and leaves the question of his credibility to the factfinder.

3 – OPINION AND ORDER

defensive posture, moving it up and down between his face and his abdomen to prevent Deputy McIrvin from hitting him. *Id*. at 4, 5 ("and he's already swung on me before, shoved me in my cell, so I was protecting myself from him."). Plaintiff further testified,

> I was still backing up, and I was still being defensive because he's a handsy guy. And then I looked to go into the cell, and that's when he popped me. He hit me in the face, and then I must have reached out with my left hand because I was going that way, and my fingers hit the doorjamb, and he slammed that door right away and cut them off.

*Id*. at 5. Rather than falling backwards onto the cell floor and then lunging for the door, as Deputy McIrvin avers, Plaintiff states that he stumbled backwards and caught the door with his hand immediately before Deputy McIrvin slammed the door. *Id*. at 7.

When Deputy McIrvin saw Plaintiff "wrap his hand in his shirt," he immediately called for medical assistance. Hisel Decl. Ex. 8, at 16. Medical staff arrived a few minutes later and found that Plaintiff suffered an acute amputation of the tips of his left middle and ring fingers. Hisel Decl. Ex. 6, at 2; Ex. 8, at 23 ("left, middle, and ring fingertips had been smashed, removing some flesh."). He "also had about a one inch cut under his left eye," where Deputy McIrvin struck his face. Hisel Decl. Ex. 8, at 23–24. Plaintiff was eventually treated for his injuries at the Oregon State Hospital. Defs.' Mot. 9.

## STANDARD

"Federal Rule of Civil Procedure 56(a) expressly permits a party to move for summary judgment on a claim or defense." *E.E.O.C. v. Fred Meyer Stores Inc.*, 954 F. Supp. 2d 1104, 1112 (D. Or. 2013) (internal quotations and emphasis in original omitted). This Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could find in favor of the non-moving party. *Rivera v. Phillip*

*Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.*

The Court reviews evidence and draws inferences in the light most favorable to the nonmoving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to avoid summary judgment. *Anderson*, 477 U.S. at 252. Uncorroborated allegations and "self-serving testimony" are also insufficient. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

## DISCUSSION

Defendants move for summary judgment, arguing that the Fourth Amendment is not applicable in this case and that Plaintiff's state claims fail as a matter of law. Defs.' Mot. 11–16. Plaintiff concedes that his Fourth Amendment and IIED[6] claims should be dismissed, but requests that this Court deny summary judgment on his battery claim. Pl.'s Resp. 1–2. Plaintiff also seeks leave to amend his section 1983 claim under the proper constitutional amendment. *Id.*

### I.   The Fourteenth Amendment Due Process Clause Applies to Pretrial Detainees

---

[6] Plaintiff's IIED claim is primarily based on allegations that he did not receive adequate medical care and was "refused treatment" at Douglas County Jail. Pl.'s Compl. ¶ 8, ECF No. 1. The Court agrees with Defendants that this argument is contradicted by the record, which indicates that "Plaintiff was offered nearly constant medical treatment to varying degrees of success due to Plaintiff's intermittent refusals." Defs.' Mot. 10. Because both parties consent to dismissal of Plaintiff's IIED claim, the Court grants this request without further discussion of the merits of the claim.

Plaintiff brings his excessive force claim under the Fourth Amendment pursuant to 42 U.S.C. § 1983.  The parties agree, however, that the Fourth Amendment does not apply to pretrial detainees who are lawfully in custody. Defs.' Mot. 11; Pl.'s Resp. 5. In excessive force cases, "[t]he status of the detainees determines the appropriate standard for evaluating conditions of confinement." *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1163 (9th Cir. 2020). The constitutional protections under the Fourth Amendment apply to "an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Pierce v. Multnomah Cnty., Or.*, 76 F.3d 1032, 1043 (9th Cir. 1996). Protections under the Fourteenth Amendment Due Process Clause attach once a detainee is lawfully in custody, but before they are convicted of a crime and sentenced to a term of imprisonment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") Finally, "the Eighth Amendment's prohibition against the malicious or sadistic use of force, does not apply until after conviction and sentence[.]" *Pierce*, 76 F.3d at 1042 (internal citations and quotations omitted).

The facts here indicate that Plaintiff's excessive force claim must be analyzed under the Fourteenth Amendment Due Process Clause, rather than the Fourth Amendment. At the time of the incident, Plaintiff was already lawfully held in custody following probable cause for his arrest, but he had not yet been convicted of the charges against him.[7] For these reasons, Plaintiff's Fourth Amendment claim must be dismissed.

## II.     Leave to Amend

---

[7] The Court seeks to clarify for Plaintiff that the Eight Amendment's "malicious and sadistic" use of force standard is also not applicable here. *See* Pl.'s Resp. 5.

6 – OPINION AND ORDER

After a responsive pleading is served, plaintiffs must request leave of the court to further amend a complaint. FED. R. CIV. P. 15. District courts have significant discretion when considering leave to amend, but courts usually grant such leave liberally "when justice so requires," FED. R. CIV. P. 15; *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185–86 (9th Cir. 1987). However, five factors—prejudice to the defendant, undue delay, bad faith, futility, and previous amendment—limit that liberality. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). The factors weigh differently, with undue prejudice to the opposing party carrying the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Undue delay by itself is insufficient as grounds for dismissal. *DCD Programs, Ltd.*, 833 F.2d at 186.

### A. Futility

Defendants claim that allowing Plaintiff to amend his complaint would be futile because (1) Plaintiff still seeks to bring his excessive force claim under the wrong constitutional standard, and (2) Deputy McIrvin is entitled to qualified immunity. Defs.' Reply 2, ECF No. 44. Although Plaintiff mistakenly seeks to amend his claim under the Eighth Amendment, the Court hopes it is clear by now that the *Fourteenth Amendment* is the applicable constitutional standard in this case. *See* Pl.'s Resp. 5. For the following reasons, a Fourteenth Amendment claim will survive summary judgment, and therefore, is not futile.

#### 1. There are Genuine Issues of Material Fact

The evidence in this case presents a genuine issue of material fact as to whether Deputy McIrvin used excessive force against Plaintiff. "[T]he Fourteenth Amendment prohibits all punishment of pretrial detainees," *Vasquez*, 949 F.3d at 1163–1164, including the "use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397

7 – OPINION AND ORDER

(2015). To prevail on an excessive force claim under the Fourteenth Amendment, a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396–397.

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. at 397. "[A] court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id*. at 399. Moreover, the court must find that "the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id*. at 398.

In this case, Defendants argue that Deputy McIrvin used reasonable force against Plaintiff, who "posed an immediate threat to Deputy McIrvin's personal safety and his ability to maintain order in the jail." Defs.' Mot. 15. Deputy McIrvin claims that Plaintiff suddenly approached him in a fighting stance and "was going to hit [him]," so he "delivered a focused blow [to Plaintiff's head] to force Plaintiff into his cell[.]" *Id.*; Hisel Decl. Ex. 8, at 18–19. In contrast, Plaintiff claims that he was not the aggressor, but merely raised his left arm defensively to protect himself from Deputy McIrvin, who had forcefully pushed him into his cell on a previous occasion. Hisel Decl. Ex. 9, at 3–5.

Despite Plaintiff's verbal threats, Deputy McIrvin knew Plaintiff had not been previously violent against any other staff members or inmates at Douglas County jail. This seems to be evidenced by the fact that Plaintiff was escorted to his cell unshackled with only one attending officer. Hisel Decl. Ex. 8, at 10. Moreover, Deputy McIrvin testified that he has completed over

8 – OPINION AND ORDER

130 hours of specialized training in restraining individuals, unarmed combat, and defensive tactics. Mee Decl. Ex. 102, at 4, ECF No. 43. With this type of experience, a jury could find that a reasonable officer in Deputy McIrvin's position might have used a different approach to deescalate the situation and safely return Plaintiff to his cell. Coupled with the fact that immediately prior to the altercation, Plaintiff taunted Deputy McIrvin with obscenities and — admittedly egregious — racial slurs, the Court is skeptical of whether punching Plaintiff in the face was an objectively reasonable use of force, in response to Plaintiff's "defensive" boxing stance.

While the blow to Plaintiff's face was intentional, Deputy McIrvin avers that the subsequent injury to Plaintiff's fingers was an unfortunate accident. Hisel Decl. Ex. 8, at 26 ("if I would have seen [Plaintiff's] limbs near the doorjamb, I would have not shut the door."). Deputy McIrvin states that Plaintiff fell back into his cell in a seated position, then stood back up and reached for the door. Conversely, Plaintiff states that he did not fall, but stumbled backwards and caught the door with his left hand; Deputy McIrvin then slammed the door shut. With "less than a second" between Plaintiff falling over and Deputy McIrvin slamming the door, a jury could reasonably find that Plaintiff's fingers were already in the doorjamb when Deputy McIrvin shut the door.

In sum, a genuine issue of material facts remains regarding (1) whether Plaintiff instigated the altercation in a threatening manner or merely raised his arm in a defensive posture, (2) where Plaintiff fell inside his cell and what position he was in, and (3) whether Deputy McIrvin saw Plaintiff's hand in the doorjamb before slamming the door shut. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Deputy McIrvin was

provoked by Plaintiff's remarks, lost his temper, and intentionally assaulted Plaintiff under the guise of using "reasonable force." These issues cannot be resolved at summary judgment.

### 2. **Qualified Immunity**

Defendants next argue that amendment is futile because Deputy McIrvin is entitled to qualified immunity "regardless of the Constitutional Amendment Plaintiff attempts to rely upon." Defs.' Reply 3. The Court disagrees. Government officials are not entitled to qualified immunity if their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *White* v. *Pauly*, 580 U. S. 73, 78–79 (2017)). At the summary judgment stage, courts must engage in a two-pronged inquiry: (1) whether "the officer's conduct violated a federal right," and (2) "whether the right in question was clearly established at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 655–656 (2014) (cleaned up). "Courts have discretion to decide the order in which to engage these two prongs. But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.* at 656.

Because there are several key issues of material fact in dispute, the first prong — whether Deputy McIrvin's use of force violated Plaintiff's constitutional rights — must be determined by a factfinder. Turning to the second prong, this Court must "define the clearly established right at issue" based on inferences drawn in favor of Plaintiff. *See Id.* at 657 ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when . . . a court decides only the clearly-established prong of the standard."); *Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Viewing the facts in the light most favorable to Plaintiff, the law has clearly established that jail and prison staff may not intentionally harm or punish inmates, absent some legitimate governmental objective. *Kingsley*, 576 U.S. at 397–398 (pretrial detainee['s are protected] from the use of excessive force that amounts to punishment . . . such "punishment" can consist of actions taken with an expressed intent to punish."). Even in the Eighth Amendment context — which requires a higher standard than the Fourteenth Amendment's objectively reasonable standard — the use of force "for the very purpose of causing harm" will always violate an inmate's constitutional rights.[8] *Hudson v. McMillian*, 503 U.S. 1, 4–6, 9 (1992). Therefore, if a jury finds that Deputy McIrvin intentionally assaulted Plaintiff out of some retaliatory animus, rather than an objectively legitimate concern for his personal safety, he will not be entitled to qualified immunity.

### B. Prejudice

Finally, allowing Plaintiff to amend his Complaint will not delay the case or unduly prejudice Defendants. An excessive force claim under the Fourteenth Amendment rather than the Fourth Amendment does not significantly alter the legal analysis or factual issues in dispute. The Court sees no reason why the parties would need to reschedule depositions or conduct discovery any differently under a Fourteenth Amendment framework. Although courts generally discourage amending claims at such a late stage in the litigation, denying Plaintiff the opportunity to vindicate his claims because of a technical error by his attorney would not serve the ends of justice. "Absent prejudice, or a strong showing of any of the remaining [] factors,

---

[8] On remand from the Supreme Court, the Fifth Circuit found that correctional officers violated an inmate's constitutional rights by holding him down and punching him in the "face, chest, and abdomen" for "the very purpose of causing him harm." *Hudson v. McMillian*, 962 F.2d 522, 522–523 (5th Cir. 1992).

11 – OPINION AND ORDER

there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC*, 316 F.3d at 1052 (emphasis in original).

### III. State Battery Claim

Finally, Defendants contend that Plaintiff's state battery claim fails as a matter of law. Defs.' Mot. 14. Under Oregon law, a civil "battery is a voluntary act that is intended to cause the resulting harmful *or* offensive contact" to another person. *Johnson v. Jones*, 344 P.3d 89, 93 (Or. App. 2015) (emphasis in original). However, Oregon courts have carved out exceptions to civil battery claims in circumstances where police officers or correctional facility staff use reasonable force against detainees to maintain safety and order. *Evans v. Multnomah Cnty.*, No. 07-CV-1532-BR, 2009 WL 1011580, at *8 (D. Or. Apr. 15, 2009), *reversed in part on other grounds*, ("when the physical violence exerted by the officers against [the] plaintiff was no more than necessary to accomplish the legitimate purpose of fulfilling their duty, the force was reasonable and the officers did not commit assault or battery."). That being said, "the use of excessive force by a police [or correctional] officer . . . can give rise to civil liability for battery." *Ballard v. City of Albany*, 191 P.3d 679, 686 (Or. App. 2008).

Defendants misguidedly rely on ORS 161.205 as an affirmative defense to civil battery, which provides that,

> [t]he use of physical force upon another person that would otherwise constitute an offense is justifiable and *not criminal* under any of the following circumstances:
>
> (2)  Subject to ORS 161.237 . . . an authorized official of a jail, prison or correctional facility may use physical force when and to the extent that the official reasonably believes it necessary to maintain order and discipline or as is authorized by law.
>
> (5)  A person may use physical force upon another person in self-defense or in defending a third person, in defending property, in making an arrest or in preventing an escape [.]

12 – OPINION AND ORDER

Or. Rev. Stat. § 161.205(2) (2023) (emphasis added); Defs.' Mot. 14. However, ORS 161.205 only protects officers from criminal liability; it is not applicable in a civil case, such as this one. *Hatfield v. Gracen*, 279 Or. 303, 307–308 (1977) ("ORS 161.205(5) . . . deals only with criminal liability, and it is not directly applicable to cases involving civil tort liability."); *Hayes v. City of Portland*, No. 3:18-CV-00988-AC, 2020 WL 1154762 at *10 (D. Or. Mar. 10, 2020) ("ORS § 161.205 on its face applies to avoiding criminal prosecution, so it does not apply to Plaintiffs' civil claims here.").

In any event, Defendants may still avoid liability if a jury finds that Deputy McIrvin's use of force against Plaintiff was reasonable. As discussed *supra*, because there are genuine issues of material fact that must be determined by a factfinder, Plaintiff's civil battery claim cannot be resolved at summary judgment.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 32) is GRANTED in part and DENIED in part. Plaintiff's Fourth Amendment and Intentional Infliction of Emotional Distress claims are dismissed. The Court grants Plaintiff leave to amend to reassert his section 1983 claim under the Fourteenth Amendment.

IT IS SO ORDERED.

DATED this 31st day of July, 2023.

                                                       /s/ Michael J. McShane
                                                          Michael McShane
                                                United States District Judge

13 – OPINION AND ORDER